IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGALIA BIANCA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| RICARDO WILLIAMS, and | ) |
| GARY SLUTKIN | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Angalia Bianca "Bianca", for her Complaint against the University of Illinois, Ricardo Williams, and Dr. Gary Slutkin, alleges as follows:

**PARTIES**

1. Plaintiff Angalia Bianca ("Bianca") is an individual residing in Cook County, Illinois.

2. The University of Illinois is an Illinois not for profit corporation with its principal place of business in Champaign, Illinois. The University of Illinois operates the University of Illinois at Chicago ("UIC") in Cook County, Illinois. Cure Violence is a project of UIC School of Public Health also located in Cook County, Illinois.

3. Defendant Ricardo Williams is on information and belief an individual residing in Cook County, Illinois. Williams is a senior administrator of Cure Violence.

4. Defendant Gary Slutkin is, on information and belief, an individual residing in Cook County, Illinois. Slutkin is the founder and Executive Director of Cure Violence.

**JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction over Bianca's claim for sexual harassment under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et seq.*) pursuant to 28 U.S.C. §1331.

6. This Court further has supplemental jurisdiction over the state laws claims asserted in this Complaint pursuant to 28 U.S.C. §1367.

7. Venue is appropriate in the Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because the Defendants reside in the Northern District of Illinois and a substantial part of the events giving rise to this Complaint occurred in the Northern District of Illinois.

**FACTUAL BACKGROUND**

8. Bianca is currently employed as a database coordinator with Cure Violence. She began her association with Cure Violence in the Rogers Park neighborhood in 2011 as a violence interrupter. In 2013, she began working at the headquarters of the organization focusing on database work.

9. In 2013, Defendant Williams was a superior of Bianca, though not her direct supervisor, and he had worked at Cure Violence for many years. Bianca had work-related reasons to go into Williams' office from time to time.

10. In early 2014, Williams called Bianca into his office, shut the door and said to her "suck my dick for a minute", promising to get Bianca on a special team that travels for work. Bianca refused, told him to stop, and walked out of his office.

2

11. Bianca was disgusted by the incident, but she did not report it for fear that she would be fired because Williams had been with the organization for many years and she was "extra help" who could be told at any time there was no more work.

12. Soon after this incident, Williams called her into his office again, blocked the door with his body, and demanded she perform oral sex on him. Williams pulled his penis out of his pants. With one hand, he held his penis and with the other, he tried to pull Bianca's hand onto it. Bianca resisted forcefully and started getting loud so people nearby could hear her. After she started making noise, Williams let her leave the office.

13. Several weeks later, Williams again called Bianca into his office and she went thinking it was work-related. She was hesitant to go back into his office but didn't feel like she had a choice if she wanted to keep her job.

14. Williams again shut the door and stood in front of it. He tried to pull Bianca's head down to his exposed penis. He kept saying: "just suck it for a minute." She resisted, but believing the only way to end was to comply, she put her mouth on his penis for a few seconds, but quickly stopped and said no forcefully.

15. Williams then lifted his shirt and said: "well at least suck on my nipple or lick my armpit" and moaned. She resisted more loudly this time, and he let her leave.

16. Following these incidents, Williams repeatedly excluded Bianca from key meetings and from team emails in a manner that made it obvious to everyone that she was purposely being excluded.

17. Williams repeatedly made demeaning comments in front of other people relating to Bianca and her work although she always received positive job reviews.

18. In late 2017, Williams became the direct supervisor of Bianca, and his harassment of her escalated. Since Williams became her supervisor, she has lost 40 pounds, which her doctor attributes to stress and she has had to seek medical treatment.

19. Williams' harassment of and discrimination against Bianca based on her gender has been ongoing and continuing since February 2014.

20. In August 2018, Bianca filed a Charge with the Illinois Department of Human Rights and the EEOC alleging discrimination and sexual harassment.

21. Ameena Matthews was employed by Cure Violence as a violence interrupter from 2008 to 2013.

22. During that time, Williams repeatedly made inappropriate sexual comments to Ms. Matthews and initiated unwanted physical contact with her, including rubbing her shoulders and back, and touching her thighs, despite her repeated requests that he stop.

23. Ms. Matthews complained directly to Defendant Slutkin about the harassment, and she specifically warned him that she was concerned about Williams' interactions with other women and how they might escalate if they were not corrected quickly.

24. Slutkin told Matthews she was overreacting, and he did nothing in response to her complaints.

25. Matthews believes the culture at Cure Violence was a "Gentlemen's Club" with a toxic, hostile environment toward women in particular.

26. Victim A worked at Cure Violence from 2010 to 2013. She has two masters degrees and was dedicated to her work in social services.

27. In 2012 and 2013, Williams would show up in her office out of the blue and engage in flirtatious and inappropriate behavior.

28. At first she just dismissed it, but Williams became more aggressive about asking her out even though they were both married. In 2013, Williams cornered her in her office and said he would not leave until she agreed to go out on a date with him. She felt incredibly uncomfortable and began to talk loudly to get the attention of people nearby, and finally Williams left.

29. She reported Williams to human resources and was told that Williams was in the process of transitioning from a rougher life, so his behavior was expected and that she "shouldn't worry about it." Williams made comments to her like "you know, snitches get stiches, right?" and laughed.

30. In December 2013, she filed a written complaint with the UIC Office of Access and Equity. That office found insufficient evidence of wrongdoing by Williams in February 2014, nearly the same time as Williams began sexually harassing Bianca.

31. After her sexual harassment claim was rejected by UIC, she was terminated.

32. Lakisha McGowan was also employed by Cure Violence as an outreach worker until recently.

33. In June, she encountered Williams when her supervisor took her to Englewood to act as security for a movie screening.

34. Williams lured Ms. McGowan into his van under the pretense of getting her a Cure Violence t-shirt from his van. As they walked to his van, Williams said he had Ms. McGowan's contract on his desk and he may or may not sign it.

35. When they reached the van, Williams pulled Ms. McGowan toward him and began smelling her neck. She pushed him off and he laughed nervously. He said "I just had to smell the perfume you had on", but she was not wearing any perfume.

36. Ms. McGowan thought she had rebuffed him and got into the van as he instructed her. Williams got in the van and started touching and rubbing his genital area through his pants. He said: "you don't want it?" She said, "I don't want what? Before she could say another word, Williams was in her seat on top of her and shoved his tongue down her throat. She pushed him off of her stunned, and left the van. Williams quickly told her he would sign her contract, implying that it was the price of her not saying anything to anyone about the incident.

37. Ms. McGowan did tell a co-worker, but she was afraid to formally report it at the time because she thought she would be fired.

38. Bianca filed a complaint with UIC's Office of Access and Equity in August 2018. That office has interviewed witnesses who Bianca told about Williams' sexual behavior at the time it happened. They have interviewed witnesses who state that Williams treated Bianca differently than other employees. They have records of the prior complaint made by Victim A. They knew from the reports of Ms. Matthews to Slutkin about the sexually aggressive and inappropriate behavior of Williams. And now, they have interviewed Ms. McGowan to further corroborate Bianca's story. Yet months after Bianca's complaint was made, Williams remains employed as a senior administrator with Cure Violence.

## COUNT I
### Violation of 42 U.S.C. §2000e

39. Bianca realleges and incorporates the allegations in paragraphs 1-38 as though fully set forth herein.

40. The unwelcome conduct of Williams alleged herein and the inaction of Slutkin, Cure Violence, UIC and the University of Illinois constitutes sexual harassment, sex discrimination, and a hostile work environment, prohibited by Title VII of the Civil Rights Act of 1964.

41. The University of Illinois has more than 15 employees and is an "employer" of Bianca under Title VII.

42. Bianca has suffered monetary and emotional distress damages as a direct and proximate result of this conduct from all Defendants.

## COUNT II
### Violation of Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.*

43. Bianca realleges and incorporates the allegations in paragraphs 1-42 as though fully set forth herein.

44. The unwelcome conduct of Williams alleged herein and the inaction of Slutkin, Cure Violence, UIC and the University of Illinois constitutes sexual harassment, sex discrimination, and a hostile work environment, prohibited by Section 1-101, *et seq.*, of the Illinois Human Rights Act.

45. The University of Illinois has more than 15 employees and is an "employer" of Bianca under the Illinois Human Rights Act.

46. Bianca has suffered monetary and emotional distress damages as a direct and proximate result of this conduct.

## COUNT III
### Negligent Supervision

47. Bianca realleges and incorporates the allegations in paragraphs 1-46 as though fully set forth herein.

48. The University of Illinois and Slutkin were supervisors of Williams and aware of Williams' propensity to engage in sexually harassing behavior toward female employees he was superior to.

49. The University of Illinois and Slutkin did nothing to prevent or discourage Williams from engaging in sexually harassing behavior despite their knowledge of it.

50. The failure of the University of Illinois and Slutkin to adequately respond to complaints of sexually harassing behavior by Williams led directly and proximately to the sexual harassment and discrimination against Bianca.

51. Bianca has suffered monetary and emotional distress damages as a result of this conduct.

## COUNT IV
### Battery

52. Bianca realleges and incorporates the allegations in paragraphs 1-51 as though fully set forth herein.

53. Williams intended to initiate sexually offensive conduct with Bianca and in fact made harmful physical contact with her on three separate occasions.

54. Bianca has suffered monetary and emotional distress damages as a direct and proximate result of Williams' conduct.

8

55. Bianca did not make her claim of sexual harassment by Williams until 2018 because of ongoing threats, intimidation and manipulation by Williams.

## COUNT V
### Intentional Infliction of Emotional Distress

56. Bianca realleges and incorporates the allegations in paragraphs 1-55 as though fully set forth herein.

57. Williams' conduct toward Bianca was extreme and outrageous.

58. Williams intended to cause, or recklessly disregarded the probability that his actions would cause, Bianca emotional distress.

59. Bianca has suffered severe emotional distress requiring medical treatment as a direct and proximate result of Williams' conduct.

60. Bianca did not make her claim of sexual harassment by Williams until 2018 because of ongoing threats, intimidation and manipulation by Williams

WHEREFORE, Plaintiff Angalia Bianca prays for judgment in her favor on the claims alleged in the Complaint, and she respectfully requests the Court grant her:

1. Compensatory damages;

2. Punitive damages;

3. Attorneys' fees and costs; and

4. Any other relief as the Court deems just and proper.

Dated: October 31, 2018   ANGALIA BIANCA

By:     */s/ Ed Mullen*
       One of Her Attorneys

Ed Mullen (Atty. No. 6286924)
Bucktown Law
2129 N. Western Ave.
Chicago, IL 60647
312-508-9433
ed_mullen@mac.com

Elizabeth Homsy (Atty. No. 6307858)
The Law Offices of Elizabeth A. Homsy
2506 N. Clark Street
Suite 286
Chicago, IL 60614
773-988-3486