UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGALIA BIANCA, | |
| Plaintiff, | Case No. 18-CV-7256 |
| v. | |
| UNIVERSITY OF ILLINOIS, RICARDO WILLIAMS, and GARY SLUTKIN, | Judge John Robert Blakey |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit involves claims arising from alleged harassment and tortious conduct during Plaintiff's tenure at Cure Violence. Defendant Williams and Defendant Slutkin move to dismiss Plaintiff's respective claims against them under Federal Rule of Civil Procedure 12(b)(6). [31]; [34]. For the reasons explained below, this Court grants Slutkin's motion [34] and grants in part and denies in part Williams' motion [31].

**I.    Background**[1]

Cure Violence constitutes a project at Defendant University of Illinois at Chicago's (UIC) School of Public Health. [30] ¶ 2. Defendant Gary Slutkin serves as Cure Violence's founder and CEO, while Defendant Ricardo Williams is a senior administrator. *Id.* ¶¶ 3–4. Plaintiff Angalia Bianca currently works at Cure

---

[1] The following allegations come from Plaintiff's Second Amended Complaint. [30].

1

Violence. *Id.* ¶ 8. She began working at Cure Violence in 2011 as a violence interrupter and now works as a database coordinator. *Id.*

### A. 2014 Conduct

Plaintiff alleges that in early 2014, Williams called her into his office and told her to "suck my dick for a minute," offering in exchange to place her on a team that travels for work. *Id.* ¶ 10. Plaintiff refused and left his office. *Id.* Out of fear of retaliation, she did not report the incident. *Id.* ¶ 11. At some point soon after, Williams again called Plaintiff into his office, blocked the door with his body, and demanded she perform oral sex. *Id.* ¶ 12. She alleges he pulled his penis out of his pants and grabbed her hand, but once again she resisted and left. *Id.*

Several weeks later, Williams allegedly again called Plaintiff into his office. *Id.* ¶ 13. She alleges she obliged because she "didn't feel like she had a choice if she wanted to keep her job." *Id.* Plaintiff claims that Williams shut the door and blocked it, after which he forced her head down to his exposed penis and said, "just suck it for a minute." *Id.* ¶ 14. Though she initially resisted, she put her mouth on his penis for a few seconds, believing she could only end the encounter by complying. *Id.* After further requests and subsequent resistance, he let her leave. *Id.* ¶ 15.

Plaintiff claims that Williams then excluded her from key team meetings and emails in a manner such that everyone knew he acted purposefully. *Id.* ¶ 16. Williams also repeatedly demeaned her in public. *Id.* ¶ 17. Though she alleges Williams' harassment has "been ongoing since February 2014," *id.* ¶ 21, Plaintiff does not allege any further factual details until 2017.

2

### B. 2017 Conduct

Plaintiff claims that in late 2017 Slutkin "caused" Williams to supervise her. *Id.* ¶ 64. Plaintiff believes Slutkin must have known of Williams' sexually predatory nature at the time he "caused" Williams to supervise her, because other female employees filed complaints Williams. *Id.* ¶¶ 63–64. Plaintiff does not allege, however, that she ever informed Slutkin of Williams' behavior, or that Slutkin knew of Williams' alleged actions against Plaintiff in 2014.

As it relates to Defendant Williams, after the supervisory transition, Plaintiff claims Williams' harassment of her escalated into public beratement. *Id.* ¶ 18. Allegedly, he also continued to exclude her from relevant meetings and communications, saying that as a girl she could not participate in certain work-related activities. *Id.* ¶¶ 18–19. Plaintiff claims she has lost 40 pounds since Williams became Plaintiff's supervisor, which her doctor attributes to stress. *Id.* ¶ 20.

### C. Allegations of Other Victims

Plaintiff also alleges Williams harassed at least four other women—J.S., A.M., Victim A, and L.M.—which exacerbated the organization's toxic culture.[2]

J.S. worked for the organization from 2006–2015, during which Williams allegedly sexually assaulted her. *Id.* ¶¶ 26–31. According to Plaintiff, J.S. believed Cure Violence's leadership fostered this culture, and that Slutkin knew "what was going on with [Williams]." *Id.* ¶ 32. A.M. worked for the organization from 2008–

---

[2] Plaintiff also alleges Williams made sexual advances toward a fifth woman who worked directly for Slutkin and left after Slutkin brushed her complaints aside. But Plaintiff fails to name this woman or provide any further details about this woman or the incident. [30] ¶ 50.

3

2013, during which Williams allegedly repeatedly initiated unwanted physical contact. *Id.* ¶¶ 33–34. Plaintiff alleges A.M. complained to Slutkin about Williams, but that he did nothing in response. *Id.* ¶¶ 35–36. Additionally, Plaintiff alleges Victim A worked for Cure Violence from 2010–2013. *Id.* ¶ 38. In 2012 and 2013, Williams allegedly sexually harassed Victim A by repeatedly asking her out on dates despite knowing she was married. *Id.* ¶¶ 39–40. After human resources dismissed her concerns, she allegedly filed a formal complaint with UIC. *Id.* ¶¶ 41–42. But UIC found insufficient evidence of wrongdoing, and UIC later terminated Victim A. *Id.* ¶¶ 42–43. Finally, L.M. worked for Cure Violence, and in June 2018 Williams allegedly sexually assaulted her. *Id.* ¶¶ 44–48. She told a co-worker but did not formally report the incident out of fear of retaliation. *Id.* ¶ 49.

**D. This Lawsuit**

In July 2018, Plaintiff filed an internal complaint with UIC against Cure Violence, Slutkin, and Williams. *Id.* ¶ 22. Plaintiff claims the interviewer examining her complaint did not treat her fairly. *Id.* Plaintiff states other interviewed witnesses corroborate her claims that the interviewer remained biased in favor of Slutkin and against women generally. *Id.* Plaintiff consequently lost faith and filed a charge with the Illinois Department of Human Rights and the EEOC, from which she received right to sue letters. *Id.* ¶ 23, (Ex. A-B).

The second amended (operative) complaint alleges claims for sex discrimination against UIC based upon Title VII of the Civil Rights Act of 1964 (Count I) and the Illinois Human Rights Act (IHRA) (Count II); negligent supervision

4

against Slutkin (Count III); sexual battery against Williams (Count IV); assault against Williams (second Count IV),[3] and intentional infliction of emotional distress (IIED) against Slutkin and Williams (Count V). [30] ¶¶ 51–78. Slutkin and Williams have both moved to dismiss all claims against them. [31]; [34].

## II. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When evaluating a complaint, this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

---

[3] Plaintiff mistakenly labeled two claims as Count IV alleging "sexual battery." [30] ¶¶ 67–73. This Court accordingly follows the parties' terminology in the briefs labeling the first claim "Count IV" and the "second Count IV." Moreover, Plaintiff asserts that due "to a typographical error, the "second Count IV" was also labeled 'Count IV for Sexual Battery' when it was intended to be" labeled as one for "sexual assault." [43] at 5.

## III. <u>Analysis</u>

### A. **Count III: Negligent Supervision Against Slutkin**

Plaintiff seeks to hold Defendant Slutkin liable for negligent supervision because he "caused" Williams to supervise Plaintiff despite being "aware of the sexually predatory nature of Williams" from reports of other women. [30] Count III. Importantly, Plaintiff does not seek to hold Slutkin accountable for Williams' previous 2014 sexual harassment, but alleges that in causing Williams to supervise her, Slutkin faces responsibility for Williams post-supervisorial harassment. *Id.* ¶¶ 61–66.

Defendant Slutkin, in turn, raises three arguments against Plaintiff's claim: (1) untimeliness; (2) preemption under the IHRA; and (3) failure to state a claim. [35] at 4–9. The issue of preemption under the IHRA implicates this Court's subject matter jurisdiction, and thus comes first in this Court's analysis. *See Mendez v. Perla Dental*, 646 F.3d 420, 421–22 (7th Cir. 2011) (observing that courts lack jurisdiction over IHRA-preempted claims).

#### 1. <u>IHRA Preemption</u>

The IHRA vests the Illinois Human Rights Commission with exclusive jurisdiction over allegations of civil rights violations brought under Illinois law. 775 Ill. Comp. Stat. 5/8-111(D) (2008) (stating that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"); *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). The IHRA preempts all state claims that are "inextricably linked to a civil

6

rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Naeem*, 444 F.3d at 602 (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)). Under the IHRA, an employer possesses a duty to keep the workplace free of sexual harassment. 775 Ill. Comp. Stat. 5/2-102(D); *see also Johnson v. Chicago Bd. of Educ.*, No. 00 C 1800, 2002 WL 1769976, at *5 (N.D. Ill. Aug. 1, 2002) ("Now an employer must take action under state law to prevent employees and others from engaging in harassing conduct.").

The IHRA, however, does not preempt all civil rights tort claims arising from an employer relationship. As the Seventh Circuit has explained, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the Human Rights Act." *Richards v. United States Steel*, 869 F.3d 557, 564 (7th Cir. 2017). This test rests "'on an examination of legal duties, not on the factual' overlap between the claims." *Id.* (alteration in original) (quoting *Naeem*, 444 F.3d at 603 n.4).

Two cases in this district illustrate the contours of IHRA preemption. In *Barclay v. Bio-Medical Applications of Illinois, Inc.*, the court held that the IHRA preempted a negligent supervision claim based upon allegations that the defendant breached its duties to investigate allegations of sexual harassment and to promptly take remedial measures. No. 18-cv-7260, 2019 WL 1200330, at *2 (N.D. Ill. Mar. 14, 2019). The court reasoned that because the claim remained "entirely based upon Plaintiff's sexual harassment allegations," the IHRA preempted the claim because it

7

is the IHRA, not common law, that furnishes the employer's duty to take corrective measures once learning of an employee's sexual harassment. *Id.*

Conversely, in *Fuesting v. Uline, Inc.* the court held the IHRA did not preempt plaintiff's claims for negligent hiring, supervision, and retention. 30 F. Supp. 3d 739, 744–46 (N.D. Ill. 2014). The court reasoned that the plaintiff's negligence claims "never even mention sexual harassment," but rather allege that the defendants breached certain duties not found in the IHRA, including the "duty to train and supervise employees so as to avoid battery and assault," the "duties to protect employees from imminent danger or serious harm and to discharge employees when it is reasonably foreseeable they will do harm to a third party," and the "duty to protect employees from assault and battery." *Id.* at 745. For this reason, the plaintiff successfully alleged "several independent tort duties that are unrelated to the IHRA," successfully defeating the defendants' preemption defense. *Id.*

The allegations here align with those alleged in *Barclay,* not *Fuesting*. Plaintiff alleges that Slutkin negligently supervised Williams in 2017, when he "caused Williams to supervise [Plaintiff] and did nothing to prevent or discourage Williams from engaging in *sexually harassing behavior* despite his knowledge of it." [30] ¶ 64 (emphasis added). Plaintiff additionally alleges that Slutkin's failure to "adequately respond to complaints of *sexually harassing* behavior by William led directly and proximately to the sexual harassment and discrimination" against her. *Id.* ¶ 65 (emphasis added). These allegations make clear that Plaintiff seeks to hold Slutkin liable for breaching his purported duties to protect his employees from sexual

8

harassment and to respond to complaints of sexual harassment. As in *Barclay*, and in contrast to *Fuesting*, Plaintiff walks herself into preemption by basing her entire negligent supervision claim solely upon legal duties created by the IHRA. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017) (observing that the IHRA "preempts tort claims that are 'inextricably linked' to allegations of sexual harassment") (quoting *Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002)).

Accordingly, this Court finds that the IHRA preempts Plaintiff's negligent supervision claim against Slutkin in Count III, thus divesting this Court of subject matter jurisdiction over that claim. This Court dismisses Count III without prejudice.

### B.    Count IV:  Battery Against Williams

In Count IV, Plaintiff seeks to hold Williams liable for battery, claiming that he "made harmful physical contact with her" on three occasions in 2014. [30] ¶¶ 10–15, 68. For his part, Williams does not argue that Plaintiff failed to sufficiently plead battery, which is "the unauthorized touching of the person of another." *Wilson v. City of Chicago*, 758 F.3d 875, 879 (7th Cir. 2014) (internal quotation marks omitted). Rather, in moving to dismiss, Williams argues that the two-year statute of limitations applicable to Illinois personal injury claims time-bars Plaintiff's battery claim because she did not file suit until 2018. [32] at 5 (citing 735 Ill. Comp. Stat. Ann. 5/13-202).

9

In response, Plaintiff invokes 735 Ill. Comp. Stat. Ann. 5/13-202.3, which she argues tolls her claims. [43] at 3. That statute states:

> For an action arising out of an injury caused by "sexual conduct" or "sexual penetration" as defined in Section 11-0.1 of the Criminal Code of 2012, the limitation period in Section 13-202 does not run during a time period when the person injured is subject to threats, intimidation, manipulation, or fraud perpetrated by the perpetrator or by a person the perpetrator knew or should have known was acting in the interest of the perpetrator.

The Criminal Code further defines "sexual conduct" as "any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused . . . or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." 720 Ill. Comp. Stat. 5/11-0.1. The Criminal Code defines "sexual penetration" as "any contact, however slight, between the sex organ . . . of one person and . . . the . . . sex organ, mouth, or anus of another person, . . . including, but not limited to, cunnilingus, fellatio, or anal penetration." *Id.*

This Court finds that Plaintiff plausibly pleads that Section 5/13-202.3 tolled her battery claim until 2018. Plaintiff alleges that, in 2014, Williams injured her by touching her, pulling her hand to his penis, and forcing her to perform oral sex. [30] ¶¶ 12, 14. Therefore, her battery claim clearly "aris[es] out out of an injury caused by 'sexual conduct' or 'sexual penetration,'" as defined under the statute. 720 Ill. Comp. Stat. 5/11-0.1.

Moreover, the statute tolls Plaintiff's claim during the time she was "subject to threats, intimidation, manipulation, or fraud perpetrated by the perpetrator or by a person the perpetrator knew or should have known was acting in the interest of the perpetrator." *Id.* Here, Plaintiff asserts that Williams, after the alleged instances of sexual conduct and sexual penetration, continued to harass and discriminate against her by excluding her from work-related activities, forcing her to perform menial tasks, and demeaning her at work. *Id.* ¶¶ 16–21. Plaintiff asserts that she did not complain about Williams' behavior until 2018 due to his ongoing threats, intimidation and manipulation. *Id.* ¶ 70. These facts plausibly demonstrate that Williams subjected Plaintiff to intimidation up until 2018, tolling her battery claim until then. This Court therefore denies Williams' motion to dismiss Plaintiff's battery claim in Count IV.

### C. Second Count IV: Assault Against Williams

Next, in her second Count IV, Plaintiff alleges that Defendant Williams is liable for assault for rendering her continually in "reasonable fear of unwanted touching and battery" at work. [30] ¶¶ 67–70. Williams argues that Plaintiff fails to state an actionable claim. [48] at 6–8.

An Illinois assault claim requires Plaintiff to plead: (1) a "threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words," (2) that creates a "reasonable apprehension of an imminent battery." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004). Here, Plaintiff sufficiently alleges these elements as to her 2014 encounters with Williams. She asserts, for example, that in

11

2014, Williams called her into his office, blocked the door with his body, demanded she perform oral sex on him, and tried to pull Plaintiff's hand to his penis, which Plaintiff forcefully resisted. [30] at ¶ 12. Plaintiff alleges that, on a different day, Williams blocked a door with his body, pulling Plaintiff's head down to his exposed penis, and Plaintiff put her mouth on his penis "believing [it was] the only way to end" the encounter. *Id.* at ¶ 14. These incidents (which also obviously ripened into batteries) clearly involve threatening gestures, as well as Plaintiff's apprehension of an imminent battery, and thus sufficiently form the basis of a viable assault claim. *See Kijonka*, 363 F.3d at 647; *see also, e.g.*, *Zboralski v. Monahan*, 446 F. Supp. 2d 879, 885 (N.D. Ill. 2006) (concluding that by "alleging that defendant Martin caused plaintiff to reasonably believe that she would place her fingers in plaintiff's vaginal area—an unwanted contact—and physically touched plaintiff" four times, the plaintiff adequately alleged both assault and battery).

Williams appears to concede that Plaintiff sufficiently states an assault claim based upon the 2014 incidents. [48] at 8 ("The only allegation in Plaintiff's Complaint that supports a claim for assault is the alleged battery in 2014."). Notwithstanding, Williams contends that the two-year statute of limitations time-bars these discrete 2014 incidents. *Id.* at 7–8; *see also Thompson v. Village of Monee*, No. 12 C 5020, 2013 WL 3337801, at *24 (N.D. Ill. July 1, 2013) (observing that the two-year statute of limitations applies to assault claims). This Court agrees. Unlike her battery claim, 735 Ill. Comp. Stat. Ann. 5/13-202.3 does not apply to toll Plaintiff's assault claim. As discussed above, that provision tolls only claims "arising out of an injury caused

12

by 'sexual conduct' or 'sexual penetration,'" *id.*; both "sexual conduct" and "sexual penetration" require some form of bodily contact or transmission of semen, 720 Ill. Comp. Stat. 5/11-0.1. While the alleged injury from Plaintiff's battery claim was caused by Williams' actual bodily contact, the alleged injury from her assault claim was caused by gestures Williams made that placed Plaintiff in fear of being touched. *See* [30] ¶¶ 72–73. Plaintiff's assault claim therefore does not "aris[e] out an injury" caused by "sexual conduct" or "sexual penetration" as defined under Illinois law. 735 Ill. Comp. Stat. Ann. 5/13-202.3.

Attempting to salvage her assault claim, Plaintiff argues that her allegations of assault extended well beyond 2014 and into the two-year limitations period. [54] at 6. Although undeveloped, this Court understands Plaintiff's argument to suggest that she has pled incidents of assault in 2016 and after. The complaint, however, does not support Plaintiff's argument. Indeed, although Plaintiff alleges that Williams harassed her when he became her direct supervisor in 2017—including by berating her, forcing her to form menial tasks, excluding her from meetings, and refusing her to participate in some work-related tasks—she does not allege any facts to suggest that Williams' conduct during this time period rose to the level of assault. *See* [30] ¶¶ 10–18. Assault requires a "threatening gesture, or an otherwise innocent gesture made threatening by the accompanying words" that causes reasonable apprehension of an imminent battery. *Kijonka*, 363 F.3d at 647. And Plaintiff's complaint is devoid of any allegations plausibly demonstrating that Williams made

13

any gesture causing Plaintiff to fear an imminent battery in 2016 or later. *See generally* [30].

Plaintiff also suggests that the continuing violation doctrine applies to render her assault claim timely. [54] at 4–5. Not so. The continuing violation doctrine posits that "where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 827 (N.D. Ill. 2014) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 770 N.E.2d 177, 190 (Ill. 2002)). But the continuing violation doctrine "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005) (applying Illinois law). Rather, it applies only where the "pattern, course, and accumulation of the defendant's acts are relevant to the cause of action." *Kidney Cancer Ass'n v. N. Shore Cmty. Bank & Tr. Co.*, 869 N.E.2d 186, 194 (Ill. App. Ct. 2007).

In *Rodrigue*, for example, the Seventh Circuit held that the continuing violation doctrine did not apply to toll the accrual of the statute of limitations for the plaintiff's conversion claim because "conversion does not depend on the cumulative nature" of the defendant's acts. 406 F.3d at 443. Here, as in *Rodrigue*, the tort of assault does not depend upon the cumulative nature of a defendant's acts; instead, Plaintiff can prove a violation by pointing to a single occurrence. *See Stokes v. John Deere Seeding Grp.*, No. 4:12-CV-4054-SLD-JAG, 2013 WL 1314039, at *3 (C.D. Ill.

14

Mar. 28, 2013) ("Assault and battery torts are, by their nature, not continuing torts."). The continuing violation doctrine thus cannot save Plaintiff's time-barred assault claim. This Court dismisses the second Count IV with prejudice.

### D. Count V: Intentional Infliction of Emotional Distress (IIED)

Finally, Plaintiff alleges both Defendants are liable for causing intentional infliction of emotional distress. [30] Count V. Under Illinois law, an IIED claim requires Plaintiff to plead three elements: (1) Defendant's conduct was outrageous; (2) Defendant intended to inflict severe emotional distress; and (3) Defendant's conduct caused severe emotional distress. *Nischan*, 865 F.3d at 933. Both Defendants move to dismiss this claim on various grounds.

#### 1. Preemption

First, both Defendants argue that the IHRA preempts Plaintiff's IIED claim because the claim is "inextricably linked to the sexual harassing behavior" underlying Plaintiff's IHRA claim. [32] at 8; [35] at 7 (arguing on the same grounds as negligent supervision preemption).

As discussed, to avoid IHRA preemption, Plaintiff must plead facts demonstrating that her IIED claim stands independent of the legal duties created by the IHRA. *Naeem*, 444 F.3d at 604–05. Relevant here, the IHRA does not categorically preempt IIED claims, but rather only those that rest solely upon allegations of sexual harassment. *Phillips v. Exxon Mobil Corp.*, No. 17 C 07703, 2018 WL 3458286, at *5 (N.D. Ill. July 18, 2018); *Brownlee v. Catholic Charities of the Archdiocese of Chi.*, No. 16-CV-00665, 2017 WL 770997, at *8 (N.D. Ill. Mar. 28,

15

2018) (holding the IHRA did not preempt claims of battery and IIED); *Zuidema v. Raymond Christopher, Inc.*, 866 F. Supp. 2d 933, 940 (N.D. Ill. 2011) (similar).

In *Naeem*, the Seventh Circuit affirmed a district court ruling that the IHRA did not preempt the plaintiff's IIED claim where the plaintiff alleged not only sexually harassing conduct, but also that the defendants "created impossible deadlines, set up obstacles to her performing her job, and sabotaged her work." *Naeem*, 444 F.3d at 605. The court reasoned that the IIED claim rested, at least in part, upon duties independent of those in the IHRA prohibiting discrimination, and thus survived preemption. *Id.*

In contrast, Seventh Circuit held in *Nischan* that the IHRA preempted an IIED claim where the "alleged extreme and outrageous conduct [was] the sexual harassment and retaliation that constitutes her IHRA civil rights claims." *Nischan*, 865 F.3d at 934. As the court explained, no IIED claim would exist absent the civil rights allegations in the complaint. *Id.*

With these principles in mind, this Court finds that the IHRA does not preempt Plaintiff's IIED claim as against Williams. Plaintiff appears to base her IIED claim against Williams at least in part upon the 2014 battery incidents, [30] ¶¶ 74–75, and the duty imposed by the tort of battery—to refrain from unwanted touching—remains independent of those duties arising from the IHRA, which prohibits sexual harassment. *See, e.g.*, *Zuidema v. Raymond Christopher, Inc.*, 866 F. Supp. 2d 933, 940 (N.D. Ill. 2011) (holding that the IHRA did not preempt an IIED claim alleging that a co-worker engaged in "extreme an[d] outrageous conduct by making sexual

16

statements" and touching the plaintiff in a sexual manner); *Benitez v. Am. Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 768 (N.D. Ill. 2010) (concluding that an IIED claim escaped IHRA preemption where plaintiff premised the claim upon the defendant's alleged battery, and explaining that "independent of the duty the IHRA imposes on employers to refrain from sexually harassing employees, a person has a duty to refrain from touching others without their consent").

In contrast, Plaintiff's IIED claim against Slutkin fails on preemption grounds. Slutkin argues that Plaintiff does not "connect her claim of IIED . . . to the purported battery" and instead bases the claim solely upon the inextricable sexual harassment, [35] at 8; *see also* [32] at 9, and this Court agrees. Plaintiff does not plead facts plausibly demonstrating extreme and outrageous conduct that could give rise to a non-preempted IHRA claim. Instead, Plaintiff's sole allegations regarding Slutkin remain directed at his failure to adequately address Williams' alleged sexual harassment. *See* [30] at ¶¶ 22, 32, 35–36, 64–65. In short, like the plaintiff in *Nischan*, Plaintiff's IIED claim as to Slutkin and her IHRA claims "are one and the same" in that the facts supporting her IIED claim "are identical to those supporting her IHRA claim" for failure to take corrective measures after learning of sexual harassment. 865 F.3d at 934; *see also, e.g.*, *Phillips*, 2018 WL 3458286, at *5 (holding that the IHRA preempted the plaintiff's IIED claim against her employer where the plaintiff based the claim upon a failure to discipline misconduct, because the "emotional distress caused by [the employer's] refusal to take remedial action is relevant only by virtue of the sexual discrimination that gave rise to it"). Accordingly,

17

the IHRA preempts Plaintiff's IIED claim as against Slutkin, divesting this Court of subject matter jurisdiction over that claim against him.

### 2. Timeliness

Finally, Williams argues that the statute of limitations bars Plaintiff's IIED claim, positing again that they expired in 2016, two years after the alleged battery that form the basis of that claim. [32] at 5–7. This Court rejects this argument. Just as for her battery claim against Williams, 735 Ill. Comp. Stat. 5/13-202.3 tolled Plaintiff's IIED claim until 2018. Plaintiff predicates her IIED claim at least in part upon her allegations of battery: She claims that the unwanted touching, including forced oral sex, constitutes the extreme and outrageous conduct forming the basis of her IIED claim. [30] ¶¶ 74–75. Thus, as pled, Plaintiff's IIED claim is one that "aris[es] out of an injury caused by 'sexual conduct' or 'sexual penetration.'" 735 Ill. Comp. Stat. 5/13-202.3. Further, as discussed above, Plaintiff alleges that Williams subjected her to intimidation up until 2018, the year she filed suit in this Court. Because Plaintiff plausibly demonstrates the application of Section 5/13-202.3 to toll her IIED claim, this Court denies Williams' motion to dismiss Count V.

## IV. Conclusion

For the foregoing reasons, this Court grants Defendant Slutkin's motion to dismiss Counts III and V [34], and those counts are dismissed against him without prejudice based upon IHRA preemption. This Court grants in part and denies in part Defendant Williams' motion to dismiss [31]. The "second" Count IV (assault) is

dismissed with prejudice, while Counts IV (battery) and V (IIED) stand as to Williams. All current dates and deadlines stand.

Dated: January 15, 2021

          Entered:

          John Robert Blakey
          United States District Judge